FILED
2013 Jul-25 AM 10:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

FILED
23 A 11:01
2013 JUL 22 P 8 42

U.S. DISTRICT COURT
N.D. OF ALABAMA

**NOTICE TO FILING PARTY**

It is your responsibility to
notify the clerk in writing
of any address change.
Failure to notify the clerk
may result in dismissal
of your case
without further notice.

Rashad C. Lee

Inmate Identification Number: 213823

_____

_____

(Enter above the full name(s) of the plaintiff(s)
in this action

vs.

Kim Thomas et al.

James Deloach

Grant Culliver

Cassandra Conway
(Enter above full name(s) of the defendant(s)
in this action

**Dewayne Estes,**

**Ms. Bias,** Kristen

**Shirley Brown**

1   Previous lawsuits

A.   Have you begun other lawsuits in state or federal court(s) dealing with the same facts involved
in this action or otherwise relating to your imprisonment?
Yes ( ☒ )          No ( ___ )

B.   If your answer to (A) is "yes,) describe each lawsuit in the space below. (If there is more than
one lawsuit, describe the additional lawsuit(s) on another piece of paper, using the same outline)

1   Parties to this previous lawsuit:

Plaintiff(s)   **Rashad Lee** _____

Defendant(s)   **Shirley Brown** , **Dewayne Estes** _____

_____

- 1 -

2    Court (if Federal Court, Name the district; if State Court, Name the county)

   Montgomery County

3    Docket Number   Cv-2013.000188.00 , 03-SM-2013-00199.00

4    Name the judge to whom case was assigned    William A. Shashy
     Jimmy Pool

5    Disposition (for example: Was the case dismissed?   Was it appealed?   Is it still
     pending?)   SM-2013-0199 - Dismissed, 000188.00- Pending

6    Approximate date of filing lawsuit   000188- Filed on 3/3/12
     2013.199 - filed 4/12/13

7    Approximate date of disposition   SM-2013-199 dismissed on 5/6/13

I   Place of present confinement    Limestone correctional Facility

A.   Is there a prisoner grievance procedure in this institution?
     Yes   (___)          No   ( X )

B.   Did you present the facts relating to your complaint in the state prisoner grievance procedure?
     Yes   (___)          No   ( x )

C    If your answer is YES:

     1    What steps did you take?    Although I never filed a greviance

          I did write the commissioner concerning the retaliation

     2    What was the result?    No one ever responded to my complaint

          from the Central Review office but the Commissioner office

D    If your answer is NO, explain why not?  basically told me not to write anymore concerning it

-2-

Parties

In item (A) below, place your name(s) in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.

A    Name of plaintiff(s)  Rashad C. Lee  213823

 

    Address   Limestone Correctional Facility

    28779 Nick DAvis Road Harvest, Alabama 35749-7009

In the item (B) below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the thirs blank. Use item (C ) for the names, positions, and places of employment of any additional defendants

B    Defendant  Kim Thomas

    is employed as  ADOC Commissioner at P.O. Box 301501

    at  Central Records Division Montgomery Alabama 36130

C    Additional Defendants  James Deloach, Grant Culliver, are

    also associates Commissioners at ADOC  Central Records

    Cassandra Conway is the Director of Classification  at

    Central Records, Dewayne Estes - Warden at the LCF

V.  Statement of Claim  Ms. Bias Classification Supervisor, Ms. Shirley Brown-

State here, as briefly as possible, the FACTS of your case. Describe how each defendant is involved. is the Business Office Manager at the LCF
Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets, if necessary.

    Please see attached sheets for

    Statement of the claims and facts

-3-

RELIEF

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

I want the Court to issue a preliminary injunction

and or temporary restraining order  ordering that  the

defendants remove the E-Mail from my institutional file and

transfer me back to the facility I was housed at when the

E-Mail was placed into my file vindictively, also that the

defendants repay the plaintiff for having to file the

suit for his first amendment violation and also that the

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  July 13, 2013

Signature(s)

- 4 -

defendants be ordered to not retaliate any further against the
plaintiff by mandating that he be confined Only at the Limestone
Correctional Facility when he is elegible for transfer to the
Central Alabama Area prison absent the E-Mail in his File,
and the petitioner would like a trial by jury on all issues
triable by a jury, compensatory damages in the amount of 50,000.00
and 50,000.00 in Punative damages for the constitutional violations
for each named defendant which the Court finds that have violated
my constitutional rights ,and A transfer back to Ventress or
any facility in the Central alabama area.

PETITIONER EXHIBIT 1

## Bruton, Mark (DOC)

**From:** Whaley, Paul (DOC)
**Sent:** Wednesday, February 07, 2007 4:10 PM
**To:** Bruton, Mark (DOC)
**Subject:** RE: Lee, Rashad 213823

Agree.

File prominently in institutional file.

Paul Whaley II

**From:** Bruton, Mark (DOC)
**Sent:** Wednesday, February 07, 2007 6:24 AM
**To:** Whaley, Paul (DOC)
**Cc:** Bruton, Mark (DOC)
**Subject:** Lee, Rashad 213823

**Mr. Whaley this is the inmate I was discussing with you earlier. He is guilty of Murder in Bullock County. CRB ruled not heinous 3/10/04 but reprehensible in nature. The victim inmate Lee chocked to death was the mother of his children. Inmate Lee then took the body out into the woods and dumped. VCF has received phone calls from the Victims mother stating that she did not know that inmate Lee was back in the Central Alabama Region. inmate Lee has been writing letters to her and she wanted them stopped. She was scared that inmate Lee would escape and harm her and the kids and did not want inmate Lee any where close to where they lived. Inmate Lee was called up to the Wardens office and questioned about the letters. Inmate Lee stated that yes he had written to her through his mother and no he would not quit writing to her. Due to the nature of his crime, the callousness in which he treated the body of the mother of his children, the fact that the inmate continues to harass the victims family, and the fear he has generated in the victims family, I am requesting that inmate Lee be barred from the Central Alabama region and remain in the Limestone, Bibb or Fountain areas.**

Mark S. Bruton
Classification Supervisor
Ventress C.C.
334-775-3331 ext. 214

1

PETITIONER EXHIBIT 2



# State of Alabama
# Department of Corrections

Alabama Criminal Justice Center
301 South Ripley Street
P. O. Box 301501
Montgomery, AL 36130-1501
(334) 353-3883



**BOB RILEY**
GOVERNOR

**RICHARD F. ALLEN**
COMMISSIONER

October 20, 2008

**ADMINISTRATIVE REGULATION**
**NUMBER**              448

**OPR:  OPERATIONS**

### INMATE MAIL

## I.      GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR)
establishes responsibilities, policies, and procedures for inmate mail.

## II.     POLICY

It is the policy of the ADOC to allow inmate mail in accordance with the U. S. Postal
Service regulations and the guidelines set forth in this regulation.

## III.    DEFINITION(S) AND ACRONYM(S)

A.      **Contraband:**  Any item that is not permitted by law or is either prohibited or
not specifically authorized by ADOC or institutional policy.  Items not
issued by the ADOC, not sold on the institutional canteen, or not specifically
authorized by the Warden.

B.      **Correspondence:**  Written communications to or from inmates (e.g. letters,
post cards, greeting cards) delivered by a postal service.

C.      **Inmate Personal Property:**  The items and amounts of clothing, equipment,
mail, or supplies, which an inmate is allowed to have in his / her immediate
possession.

D.      **Internet Materials:**  Downloaded copy from a web site.

E.      **Immediate Family:**  For the purpose of this regulation, mother, father,
stepparents, foster parents, husband, wife, children, stepchildren,
grandchildren, brother, sister, grandmother, grandfather, half-siblings, son-
in-law, daughter-in-law, mother-in-law, and father-in-law as documented in

the institutional file of the inmate.

F.    **Kiting:** Sending / receiving mail with contents addressed to another party for forwarding.

G. ✝  **Legal Mail:** Letters to and from attorneys, courts, judges, clerks, and other officials of the courts and government agencies.

H.    **Mail:** For the purpose of this regulation, the term "mail" includes, but is not limited to: items delivered by the U. S. Postal Service, inter-institutional mail, and any private carrier servicing the ADOC.

I.    **Mail Clerk:** Staff member(s) assigned to handle the institutional mail.

J.    **Nudity:** A pictorial depiction where genitalia or female breasts are exposed. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

K.    **Printed Materials:** Books, publications, magazines, newspapers, periodicals, circulars, and catalogues delivered by the postal services.

L.    **Reasonable Suspicion:** Rational inference that a reasonably prudent person could make from specific objective facts.

M.    **Religious Materials:** Books, pamphlets, brochures, and religious study courses.

N.    **Sexually Explicit:** A picture / illustration of actual or simulated sexual intercourse, and / or oral sex, masturbation, or materials depicting sex.

## IV.    RESPONSIBILITIES

A.    The Warden shall be responsible for developing their institutional Standard Operating Procedures (SOPs), as necessary, for the implementation of AR 448, *Inmate Mail*.

B.    The Mail Clerk is responsible for the collection, inspection, and distribution of incoming / outgoing mail and for the maintenance of the mail records.

C.    The Chaplain, or the Warden's designee, is responsible for reviewing all mail entering the institution for an inmate that is presumed to be religious materials.

## V.   PROCEDURES

A.   General Guidelines:

1.   The inmates shall be permitted to send and receive correspondence unless there is reasonable suspicion that such correspondence may present a threat to the safety and security of the facility, public, staff, or inmates.

2.   There is no limit on the volume of letters that the inmate can send or receive. However, AR 338, *Inmate Property* prescribes the number of items that inmates may have in his / her possession at one time.

3.   The Warden shall designate a mail area and secure drop box(es) for outgoing mail that is accessible to all inmates.

4.   Mail between inmates and incarcerated immediate family members, whether state, county, city, out-of-state or federal, may be allowed with the written permission of the Wardens involved.

5.   Approved mail and packages addressed to an inmate, who has been transferred or released to another known address, should be forwarded to the inmate within 48 hours, excluding weekends and holidays.

   a.   If a forwarding address is not available, such mail and packages shall be returned to the sender.

   b.   If neither a forwarding nor return address is available, the mail and packages shall be refused and returned to the post office.

6.   All inmate mail shall remain under the supervision of staff until it is distributed. Inmates are not allowed in the mail area without supervision.

7.   At no time shall mail be distributed or handled by an inmate or be accessible to any inmate other than the addressee.

8.   A staff person shall deliver incoming mail to the inmate(s) to whom it is addressed.

B.      Incoming Mail:

   1.      All incoming mail must be addressed with the inmate's name, AIS
           number, institutional name and housing unit / bed assignment.
                   Ralph Jones
                   AIS# 123456
                   Institutional Name
                   Housing Unit / bed assignment
                   Institutional Address

   2.      An inmate, who has legally changed his / her name, must use the
           dual name format: Commitment Name, AIS #XXXXXX, Legal
           Name. (See AR 450, *Legal Name Changes*)
                   Ralph Jones
                   AIS# 123456
                   Sam Cloud
                   Institutional Name
                   Housing Unit / bed assignment
                   Institutional Address

   3.      Promotional checks will not be accepted through the mail for
           deposit to inmate accounts.

   4.      Correspondence, printed material, inmate personal property, or
           money will not be delivered to inmates by visitors. The Warden /
           designee may allow attorneys to hand deliver "Legal Mail" directly
           to the inmate, subject to being searched for contraband.

   5.      Inmates will not receive mail stamped "Collect on Delivery
           (COD)".

   6.      Inmates are allowed to receive up to two (2) books of stamps per
           week in the mail.

   7.      Inmates are allowed to receive up to four (4) pages of internet
           material per letter. Excessive letters with consistent content shall
           be rejected.

   8.      Inmates are not allowed to receive any form of writing pads or
           tablets, torn out magazine pages, news clippings, or writing
           instruments in the mail.

   9.      Inmates are allowed to receive no more than four sheets of loose
           leaf paper and four envelopes per week in the mail.

10.      Inmates are allowed to receive cashier checks and personal money orders from those individuals identified on the inmates approved funds list.

     a.      Personal money orders shall only be accepted from companies licensed by the Alabama Securities Commission as identified in the ADOC Accounting Manual.

     b.      Cashier checks and personal money orders received from unauthorized individuals or unapproved companies shall be rejected in accordance with paragraph above.

C.      Outgoing Mail:

1.      All mail being sent from the institution must have a return address which will include: inmate's full name, inmate AIS number, name of institution, housing unit / bed number, street address, or P.O. Box number, as appropriate, city, state and zip code. Additionally, the following stamped disclaimer shall be included on every piece of outgoing mail sent by inmates.

> "This correspondence is forwarded from an Alabama State Prison. The contents have not been evaluated, and the ADOC is not responsible for the substance or content of the enclosed communication."

2.      An inmate, who has legally changed his / her name, must use the dual name format: Commitment Name, AIS #XXXXXX, Legal Name. (See AR 450, *Legal Name Changes*)

3.      Designated staff should collect outgoing mail once each business day.

D.      Legal Mail:

1.      Outgoing:

     a.      Inmates shall be provided two (2) free stamps per week for **legal mail** only.

         i.      The names of inmates receiving the free stamps shall be maintained in a log.

         ii.      The log shall reflect the name of the inmate, the recipient's name and address, and the date.

b. Each Warden shall designate a box for "Legal Mail."

2. Incoming:

a. A log shall be maintained by mail staff members that lists each piece of legal mail received, the date inspected, delivered, sender's name and recipient's signature.

b. The inmate shall sign for all "Legal Mail" prior to receipt.

c. All "Legal Mail" shall be opened and inspected for contraband in the presence of the inmate.

d. Improperly addressed "Legal Mail" (to include, but not limited to, incorrect or missing bed / housing assignment and / or AIS number) shall be forwarded to the Warden / designee for verification and delivery, if appropriate.

E. Limitations:

1. When abuses are found, the Warden may prohibit further correspondence by the inmate with the person to whom the offending material was directed.

2. When the Warden receives a request to terminate correspondence with an inmate, the Warden shall notify the inmate of the request and inform the inmate that further correspondence with the individual shall cease.

3. The Warden / designee shall provide documentation that will be placed in the mail area and in the inmate's institutional file of persons with whom the inmate may no longer correspond.

F. Inspection:

1. Incoming mail, including "Legal Mail", shall be inspected for contraband and / or for abuse of the mail privilege. Outgoing mail shall be randomly inspected for contraband. "Legal Mail" must not be opened to inspect for contraband except in the presences of the inmate.

2. All contraband shall be disposed of in accordance with AR 306, *Contraband and Evidence Management*.

3.      Every effort should be made to ensure that all incoming letters and packages are delivered to the inmate within 72 hours after receipt at the institution, excluding weekends and holidays. Inmates shall be notified of rejected mail in accordance with the procedures contained in V. G.

G.    Rejection:

1.      In the event that any incoming mail is rejected, the mail clerk shall cite the policy violation and complete an ADOC Form 448, *Notification of Rejected Mail*, then forward to the inmate in a timely manner.

2.      An inmate may appeal the rejection to the Warden / designee for review and final determination using ADOC Form 448.

3.      If the appeal is denied, the inmate shall have the option of returning the mail to the sender at his / her own expense within thirty (30) days; or, the mail shall be destroyed at the end of the thirty (30) day period in accordance with AR 306.

4.      Incoming mail may be considered as a threat to institutional security if it includes, but is not limited to, the following:

      a.      Inciting violence based on race, religion, sex, creed, or nationality, or disobedience toward law enforcement officials or correctional staff.

      b.      Providing instructions for the manufacturing or use of intoxicants, weapons, explosives, drugs, drug paraphernalia, smuggling or other unlawful items or substances.

      c.      Containing obscene photographs, pictures, or drawings, including publications and advertisements from distributors.

      d.      Containing plans to escape, unauthorized entry into the institution, or information or maps.

      e.      Containing information relating to security threat group activity or use of codes and / or symbols associated with security threat groups.

5.      Before delivery of a publication may be denied, the Warden / designee must review the particular publication in question and

make a specific, factual determination that the publication is detrimental to prisoner rehabilitation.

6.    Abuse of mail privileges by inmates may result in rejection and possible disciplinary action. Abuses include, but are not limited to the following:

    a.    The writing of letters containing obscene, profane, or indecent language.

    b.    Writings that contain threats, derogatory or personal attacks against any person.

    c.    Writings that contain an escape plot or any other clear threats to the institution.

    d.    Receipt of mail, identified as "Legal Mail", from an individual or agency not meeting the "Legal Mail" definition.

    e.    Writings which contain language purporting to solicit claim, or demand money, goods, or services by false statements, threats, intimidation or extortion from another person or firm.

    f.    Kiting.

H.    Publications and Books:

1.    Inmates may receive no more than two (2) books and four (4) magazines or newspapers or combination thereof per month. AR 338, *Inmate Property* prescribes the number of items that inmates may have in his / her possession at one time.

2.    The publications should be received directly from the publisher or a recognized commercial distributor; and, must be pre-paid by a family member, friend, or from the inmate's Prisoners Money on Deposit Account (PMOD).

3.    Receipt of publications by inmates in segregation shall be determined by the provisions indicated in AR 433, *Administrative Segregation and Housing for Close or Maximum Custody*, and AR 434, *Disciplinary Segregation.*

4.    The Warden / designee shall personally inspect each issue of a publication when a reasonable expectation that the particular issue

violates the standards of this regulation. If it is determined that the issue of the publication violates these standards, then they will temporarily exclude the publication.

5. The Warden / designee shall notify the inmate to whom the publication was addressed of the temporary ban.

6. If the inmate appeals the temporary ban (using ADOC Form 448), the ban shall remain in effect pending a final resolution. Upon notice of the appeal, the Warden shall furnish a copy of the documentation on the matter to the Commissioner / designee. This documentation will include copies of pages of the excluded issue that contain material that has been identified as violating the restrictions.

7. The Commissioner / designee shall review the appeal and documentation and render a decision.

    a. If the temporary ban is upheld, the inmate, the Warden, and all other institutions shall be notified that this publication is permanently banned, and the matter closed. The documentation supporting the ban shall be retained by the Legal Division and at the institution.

    b. If the temporary ban is denied, the publication shall be given to the inmate and the entire matter dropped and all documentation destroyed.

8. The permanent ban of an issue of a publication may not be relied upon to support an exclusion of a subsequent issue. For example, if the January issue of XYZ magazine is permanently banned, this ban may not be used to justify an exclusion of the February issue of XYZ magazine. Each separate issue must be evaluated independently in accordance with this regulation.

9. Inmates shall not be allowed to be members of, enter into contractual agreements with, or participate in book clubs.

I. Packages:

1. All religious materials, such as books, pamphlets, brochures, and religious study courses, shall be sent to the inmate in care of the Chaplain, or institutional designee. The Chaplain, or designee, shall distribute the materials after approval and limits have been obtained from the Warden.

2.    The Commissioner / designee shall publish instructions concerning the receipt of incentive packages for inmates. Incentive packages will be provided through contracted vendors during the months of May, September, and December.

3.    The criteria for an inmate to receive incentive packages are as follows:

    a.    Inmates must have a six (6) month clear record prior to the designated month of each particular incentive package – no disciplinaries nor behavior citations.

    b.    An inmate found guilty of rules violations for indecent exposure / exhibitionism, unauthorized possession of a phone(s) / accessories, assaults on staff, or other acts of violence of a serious nature shall be restricted from receiving packages for one (1) year from the incident.

    c.    An inmate in segregation shall not receive nor be eligible to receive incentive packages.

4.    An inmate may mail outgoing packages as outlined in the institutional SOP. However, the packages shall be inspected for unauthorized items prior to mailing. The inmate must provide postage.

5.    The Commissioner / designee may allow other packages as deemed appropriate.

## VI.    DISPOSITION

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.    FORMS

ADOC Form 448, *Notification of Rejected Mail.*

## VIII.    SUPERCEDES

This Administrative Regulation supersedes, AR 448, *Inmate Mail*, dated December 19, 2005, and any changes.

## IX.     PERFORMANCE

A.      U. S. Postal Service Regulations.

B.      AR 306, Contraband *and Evidence Management.*

C.      AR 433, Administrative *Segregation and Housing for Close or Maximum Custody.*

D.      AR 434, Disciplinary *Segregation.*

E.      AR 450, Legal *Name Change*s.

F.      American Correctional Association (ACA), Standards for Adult Correctional Institutions, 4th Edition, 4-4487, 4-4490, 4-4491, 4-4492, 4-4494, 4-4496.

G.      ADOC Accounting Manual.

Richard F. Allen, Commissioner

FEBUARY 5,2013

WARDEN ESTES-
MRS BIAS- CLASSIFICATION SUPERVISOR
MRS CASSANDRA CONWAY- ADOC DIRECTOR OF CENTRAL RECORDS

IN RE: Allen v. Barksdale,32 So. 3d 1264, 2009 Ala. LEXIS 215
ALABAMA OPEN RECORDS ACT, Ala. Code§§36-12-40,§§36-12-41.

Pursuant to the Alabama Open records act,and the Supreme Court
of Alabama holding in Barksdale ᴮ V. Allen, Supreme Court of Alabama
2009, I am requesting any and all of the institutional incident
reports,and or disciplinaries that resulted in me being Barred
from the Central alabama Regional Area as a result of an alleged
incident that occured on or About Febuary 2007 at the Ventress
Corectional Facility. At the time Classification Mark E. Bruton
placed an Erroneous E- Mail in my institutional File that is
keeping me from being placed in an Central Alabama facility which
the immediate area my family resides. This holding by the Supreme
Court held that " The requested documents did not fall within the
purview of the Open record Act and Tarlton V. States, 430 F. 2d
1351 (5th Cir, 1970) or the Opinion of the Attorney General of
Alabama. I need this EVIDENCE to present to the Courts that I
am flagrantly being denied the opportunity to visit my family
which is a violation of my First Amendment Right absent any
Legal Evidence that I actually wrote the alleged letters.
Also I would like copies of the letters that I was suppose to
have written with the dates stamped dates when they were entered
and placed into my institutional file.

CC: File
Limestone Imaged
Hand Mail to the Above with the exception of ADOC director
which was placed in the Mail on Febuary 6,2013

RECEIVED
FEB 0 7 2013
By Limestone Classification

PETITIONER EXHIBIT 4

6-8-13

RECEIVED

Mr Dear:

Hope that you are having A [illegible] Or not. I was wondering what is Cassandra Conway saying about getting this Restriction out my file. I have a nine month clear record, I lost my grandfather on Friday, I need to see my mom, kids, grandchild! I aint did Shit to be treated like this! my mom is sick behind the surgeries and the loss of here dad! What the hell want from me?

I will not respond to you until you write me in a respectful manner. Keep on & I will write you up for insubordenation. X Brav 6/11/13

Mr. Killgore

a/n Re to ALDOC Classification manual Section
4.2.3 Special Classification Review which states in
Relevant Part: "A Special Program review will be
conducted when there has been a significant change in
treatment (program need or states. Reasons for granting
a Special Review could be include, but not limited to
"Identification and verification of A Known Enemy
(Life or Safety threatening situation)

As 10-12-12 I had (2) Known enemies validated in the
Camp and currently Carolyn Golson has me Barred from
Central Alabama Facilities! I'm requesting A Special
Review to upgrade my Custody to Maximum and transfer
me to St Clair on Holman I sent I Custody waiver
to Classification in Montgomery also a letter requesting
that the Illegal Restriction for Central Alabama
being Removed based upon the Victim family members
request in writing to Carolyn Golson. Can you
E-mail Carolyn Golson to see if she received the
request from the immediate family members of the
victim and intend to Remove the restriction
and / or Go Ahead & See if this gonna Pull my
Custody & upgrade it and transfer me to St Clair?

Answered on 1st request.

OCT 19 RECD

24382 3

om.R.

A-2

T. Kennard
582 Hardaway Ch. Rd
Union Springs, Al.
36089

MONTGOMERY AL 360

05 MAR 2012 PM 4 L



ENTERED
MAR 07 2012
BY: 150.
1307

045

Rashad Lee # 213823
Limestone Cou. Facility
28779 Nick Davis Road
Harvest, Al.   B. bl.
35749

13 B

7009

3574957009          PETITIONER EXHIBIT 6

PETITIONER EXHIBIT 7

**INMATE REQUEST SLIP**

Name Shad Lee   Quarters A 2-2B   Date 10/26/12

AIS # 213823

( ) Telephone Call ( X ) Custody Change ( ) Personal Problem

( ) Special Visit ( ) Time Sheet ( ) Other _____

Briefly Outline Your Request - Then Drop In Mail Box

Mr Brown this is my 3rd Request | letter
that you won't Respond to. I'm requesting
that you Email Carolyn Golson and tell
her I want to Waive my min In and
Be placed in Close Custody At St Clair or
Holman prison Since you wont inquire
into How I get the Restriction on my
File Because I never did that Shit
Mark Bruton Said I did.

Do Not Write Below This Line - For Reply Only

Ms. Golson will advise us of what to do if
she considers your request.

M. B

| Approved | Denied | Pay Phone | Collect Call |

Request Directed To: (Check One)

( ) Warden ( ) Deputy Warden ( ) Captain

( X ) Classification Supervisor ( ) Legal Officer Notary ( ) Record Office
Public

OCT 26 REC'D

N176

CORRECTIONAL FACILITY

10/24/12

Mr Riley:

I write again to see did you recieved my request that you
Contact Carolyn Hudson via E-mail to see if she will lift the
restriction from my file based upon the request of my kids which
are Grown and immediate family members. And if not can you ask
in your E-mail what needs to be done to have it removed because
I Never contacted that lady! Please advise me ASAP as my mother
has an attorney looking into the matter.                    Rodriguez 313823

When Ms. Gibson gets to your paperwork, she will
advise me if anything needs to be done.

OCT 25 REC'D

— M. Riley

PETITIONER EXHIBIT 8 8

PETITIONER EXHIBIT 9

RECEIVED

FEB 1 3 2013

Limestone Classification

February 9, 2013

Mr Bias:

In Reference to An Earlier request that I wrote to you I'm requesting respectfully that you E-mail and or Call Mo Tara Knee, @ the Personnel Board. She is the General Counsel for the Board and She was the Counsel that argued the Case for Richard Allen to the Supreme Court and last when the Court ruled in favor of the inmates that we Could get Copies of Anything from our files except I & D reports. I need the requested documents from my files the incident reports and Disciplinaries that prompted DOC to put the E-mail in my file that has me Unconstitionally Barred and Cant see my family. Die written Warden Estes the same

Rashad Lee 213823 ⅄-77

Lee,
The manual says I can't do ct. You will have to get a court order. My hands are tied. JBias
2/13/13

Limestone Imaged
2513

PETITIONER EXHIBIT10

ELECTRONICALLY FILED
9/10/2012 3:42 PM
CV-2012-000579.00
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
FLORENCE CAUTHEN, CLERK

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY ALABAMA

Rashad Lee AIS# 213823

### CIVIL ACTION NO.: CV-12-579-R

Stephanie Atchison, et.al.

### AFFIDAVIT

My name is Stephanie Atchison and I am presently employed as Assistant Director of Classification, Alabama Department of Corrections, P. O. Box 301501, Montgomery, Alabama 36130. I have worked in the Classification Division for 33 years as a Classification Specialist (1978-1981), Classification Specialist Supervisor (1981-2005), Central Review Board Analyst (2005-2008) and Assistant Director of Classification (2008 to present).

The Plaintiff alleges that he was advised by his Classification Specialist, Mr. Freeman Riley, that I had "permanently banished/barred," him from placement at any facilities in the Central Alabama Region. This respondent has not barred or 'banished' the Plaintiff from any facility. In 2007, then-Classification Director Paul Whaley agreed that this inmate should be transferred away from Ventress due to his admittedly contacting the victim's family against rules and regulations of the ADOC mail policy. Even so, it doesn't appear that this inmate moved from Ventress until 2010.

In 2011, I authorized the transfer of the inmate to Ventress noting Mr. Whaley's restriction. Inmate Lee did not move at that time. In March, 2012, inmate Lee moved to Bullock. The Classification Supervisor emailed the Director of Classification Carolyn Golson to inquire if the 2007 restriction was still in force. Director Golson agreed that the restriction should remain and authorized the inmate's transfer to Bibb.

The allegations against this Respondent are hereby answered.

Stephanie Atchison

COUNTY OF MONTGOMERY

SWORN TO AND SUBSCRIBED before me this the 3rd day of July 2012.

Notary Public

My Commission Expires: 4|11|2015

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY ALABAMA

Rashad Lee  AIS# 213823

CIVIL ACTION NO.:  CV-12-579-R

Stephanie Atchison, et.al.

### A F F I D A V I T

I, Stephanie Atchison, hereby certify and affirm that I am the Assistant Director of Classification for the Alabama Department of Corrections. I affirm that the attached documents are true, exact, and correct photocopies of the records maintained here at the Central Office, of one **Rashed Lee  AIS #213823**; and that I am over the age of twenty-one years and I am competent to testify to the aforesaid documents and matters stated therein.

I further certify and affirm that said documents are maintained in the usual and ordinary course of business at Central Records.

- 2-7-2007 email communication from Paul Whaley restricting inmate Lee for placement in a Central Region Facility.
- Authorization by this Respondent that inmate Lee was authorized to transfer to Ventress.
- 3-9-2012 email communication from Director Carolyn Golson reinstating the central Region Facility restriction.

_Stephanie Atchison_
Stephanie Atchison

COUNTY OF MONTGOMERY

SWORN TO AND SUBSCRIBED before me this the 3ʳᵈ day of July 2012.

_Courtney Cotterury_
Notary Public

My Commission Expires: 4|11|2015

*Carolyn A. Golson*
*Correctional Classification Director*
*301 S. Ripley Street*
*Montgomery, AL. 36104*

*Ph#(334)353-9744*
*Fax#(334)353-9701*

**From:** Wilson, Michelle (DOC)
**Sent:** Wednesday, March 07, 2012 12:31 PM
**To:** Golson, Carolyn (DOC)
**Subject:** Lee, Rashad B/213823
**Importance:** High

Ms. Golson,

In reviewing the above-mentioned inmates' file I came across the attached email. Inmate Lee was transferred to Bullock from Limestone on 3/6/12. I would like to know if we should still honor this request.


Michelle Wilson
Classification Specialist Supervisor
Bullock Correctional Facility
(334) 738-5625 Ext. 250
(334) 738-5604 Fax

## Atchison, Stephanie (DOC)

**From:** Wilson, Michelle (DOC)
**Sent:** Friday, March 09, 2012 2:04 PM
**To:** Golson, Carolyn (DOC)
**Subject:** RE: Lee, Rashad B/213823

Inmate Lee was transferred today, to Bibb.

Thanks,
Michelle Wilson
Classification Specialist Supervisor
Bullock Correctional Facility
(334) 738-5625 Ext. 250
(334) 738-5604 Fax

**From:** Golson, Carolyn (DOC)
**Sent:** Wednesday, March 07, 2012 4:16 PM
**To:** Wilson, Michelle (DOC)
**Subject:** RE: Lee, Rashad B/213823

Thank you.

*Carolyn A. Golson*
*Correctional Classification Director*
*301 S. Ripley Street*
*Montgomery, AL 36104*

*Ph#(334)353-9744*
*Fx#(334)353-9701*

**From:** Wilson, Michelle (DOC)
**Sent:** Wednesday, March 07, 2012 3:47 PM
**To:** Golson, Carolyn (DOC)
**Subject:** RE: Lee, Rashad B/213823

Thanks. I'm trying to get Bibb to swap with me. I will advise once it's complete.

Michelle Wilson
Classification Specialist Supervisor
Bullock Correctional Facility
(334) 738-5625 Ext. 250
(334) 738-5604 Fax

**From:** Golson, Carolyn (DOC)
**Sent:** Wednesday, March 07, 2012 3:39 PM
**To:** Wilson, Michelle (DOC)
**Subject:** RE: Lee, Rashad B/213823

Excellent catch. Yes we want to honor that request. Can you all handle the move? I don't think TAS is coming that way soon.

1

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY ALABAMA

Rashad Lee  AIS# 213823

CIVIL ACTION NO.: CV-12-579-R

Stephanie Atchison, et.al.

A F F I D A V I T

I, Stephanie Atchison, hereby certify and affirm that I am the Assistant Director of Classification for the Alabama Department of Corrections. I affirm that the attached documents are true, exact, and correct photocopies of the records maintained here at the Central Office, of one **Rashed Lee  AIS #213823**; and that I am over the age of twenty-one years and I am competent to testify to the aforesaid documents and matters stated therein.

I further certify and affirm that said documents are maintained in the usual and ordinary course of business at Central Records.

- 2-7-2007 email communication from Paul Whaley restricting inmate Lee for placement in a Central Region Facility.
- Authorization by this Respondent that inmate Lee was authorized to transfer to Ventress.
- 3-9-2012 email communication from Director Carolyn Golson reinstating the central Region Facility restriction.

Stephanie Atchison

COUNTY OF MONTGOMERY

SWORN TO AND SUBSCRIBED before me this the 3rd day of July 2012.

Notary Public

My Commission Expires: 4|11|2015

I am writing in response to your denial of my request to have copies of the incident report and or any disciplinaries concerning the alleged incident in 2007 to which we spoke about. I'm 100% sure the Court of Appeal held that I am allowed the requested documents in Richard Allen v. Mary Barksdale, 32 So 3d 1264, (2009). If you would call legal Division give them the quote from above and they will verify that the Alabama Supreme Court says that I am allowed the requested documents. I'm ready to see my family Warden Estes and without these documents to prove there was no incident I won't be able to see my kids, grandchild, or mom as I havent in (3) long years. I am attempting to gain access to these documents so I can get this E-mail out of my file! The states Attorney was Tara Knee, depidty legal Counsel. For the Alabama Personnel Board. Dept. Can or Will you Call her to ask her because I'm sitting here with the Case from the internet and the Supreme Court Definetly says :

"The Commissioner of the (ADOC) challenged an Order of the Montgomery Circuit Court (Alabama), which granted a human rights organization and inmates summary Judgment in their Actions alleging that the Commissioner violated the Alabama Open Record Act, Ala Code §36-12-40 and §36-12-41, by failing to Comply with their request ... Reports regarding prison

incident. I was praying I have a human right.
Organization and inmates summary judgment in their
action alleging that the Commissioner of the ADOC
violated the Alabama Open Records Act & Ala Code § 36-12
40, and § 36-12-41, by failing to release incident
reports. The Order safeguarded the Commissioner's
interest in protecting inmates or DOC employees.
The Court held: "The Organization sought incident
reports regarding assaults and murders of several
inmates at a correctional facility. The DOC stated
that the information was part of an inmate's file,
which was not public record. The trial Court Ordered
the records produced, subject to the Commissioner
retaining the rights to redact sensitive information
in A Case by Case basis. The Supreme Court
held that the trial Court Order safeguarded any
interest the Commissioner had in protecting the
inmates or DOC employees from a specific threat
or harm. The Commissioner's refusal to release incident
reports to the general public was not protected by
§12-21-3.1(b), but an investigated report produced by
the intelligence and investigation division was.

Thus I Am ~~Entitled~~ to the Requested Documents.
And Again Respectfully Seek to have A Copy of
the Same

Rashal Lee

213823
K77-31A

FEBUARY 5,2013

WARDEN ESTES-
MRS BIAS- CLASSIFICATION SUPERVISOR
MRS CASSANDRA CONWAY- ADOC DIRECTOR OF CENTRAL RECORDS

IN RE: Allen v. Barksdale,37 So. 3d 1264, 2009 Ala. LEXIS 215
       ALABAMA OPEN RECORDS ACT, Ala. Code§§36-12-40,§§36-12-41.

Pursuant to the Alabama Open records act,and the Supreme Court
of Alabama holding in Barksdale B. V. Allen, Supreme Court of Alabama
2009, i am requesting any and all of the institutional incident
reports,and or disciplinaries that resulted in me being Barred
from the Central alabama Regional Area as a result of an alleged
incident that occurred on or About Febuary 2007 at the Ventress
Corectional Facility. At the time Classification Mark F. Bruton
placed an Erroneous E- Mail in my institutional File that is
keeping me from being placed in an Central Alabama facility which
the immediate area my family resides. This holding by the Supreme
Court held that " The requested documents did not fall within the
purview of the Open record Act and Tarlton V. States, 430 F. 2d
1351 (5th Cir, 1970) or the Opinion of the Attorney General of
Alabama. I need this EVIDENCE to present to the Courts that I
am flagrantly being denied the opportunity to visit my family
which is a violation of my First Amendment Right absent any
Legal Evidence that I actually wrote the alleged letters.
Also l would like copies of the letters that I was suppose to
have written with the dates stamped dates when they were entered
and placed into my institutional file.

CC: File
    Hand Mail to the Above with the exception of ADOC director
    which was placed in the Mail on Febuary 6,2013

PETITIONER EXHIBIT 19

## BEFORE THE STATE BOARD OF ADJUSTMENT
## OF ALABAMA

### CLAIM OF:

### RASHAD LEE
#### vs.

### DEPARTMENT OF CORRECTIONS

### CLAIM NO.: 175-20120288

### <u>ANSWER</u>

Comes now the Alabama Department of Corrections and moves the Board to deny this claim.

1.    Claimant is seeking reimbursement in the amount of $150.00 for alleged missing money order.

2.    Shirley Brown, Business Manager of Limestone Correctional Facility does not recommend reimbursement. (See attached affidavit)

3.    The Alabama Department of Corrections denies liability for the claim based upon the affidavit submitted and attached hereto by Shirley Brown.

Wherefore these premises considered, the Alabama Department of Corrections prays that the Board deny the claim of Inmate Rashad Lee at this time.

Respectfully submitted this ⎰⎱ day of November, 2012.

Anne A. Hill (ADA054)
General Counsel

Kathryn D. Hubbard (AND069)
Assistant General Counsel

**OF COUNSEL**
Department of Corrections
Post Office Box 301501
Montgomery, Alabama 36130
(334) 353-3890

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served upon:

Rashad Lee
#213823
565 Bibb Lane
Brent AL 36034

by placing a copy of same in the United States Mail, first class postage prepaid and properly
addressed this ⊔⋀⋏ day of November, 2012.

Kathryn D. Hubbard (AND069)
Assistant General Counsel

PETITIONER EXHIBIT 20



# State of Alabama
# Department of Corrections

Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749
(256) 233-4600



**ROBERT BENTLEY**
GOVERNOR

**KIM T. THOMAS**
COMMISSIONER

February 6, 2013

## MEMORANDUM:

**To:**      Inmate Rashad Lee / 213823
            E17001A

**From:**    DeWayne D. Estes
            Warden III

**Subject:**   Request for Disciplinary and Incident Reports

There are no applicable rulings which support your request.


DDE/tsr

cc: File

PETITIONER EXHIBIT 21





# State of Alabama
# Department of Corrections

Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749
(256) 233-4600



**ROBERT BENTLEY**
GOVERNOR

**KIM T. THOMAS**
COMMISSIONER

February 8, 2013

## MEMORANDUM:

**To:**     Inmate Rashad Lee / 213823
         K77031A

**From:**   DeWayne D. Estes
         Warden III

**Subject:**   Request for Disciplinary and Incident Reports

Asked and answered.

DDE/tsr

cc: File



PETITIONER EXHIBIT 22

**AlaFile E-Notice**

03-SM-2013-000199.00

Judge: JIMMY B POOL

To: LEE RASHAD C #213823 (PRO SE)
28779 NICK DAVIS RD
HARVEST, AL 35749-0000

# NOTICE OF ELECTRONIC FILING

IN THE SMALL CLAIMS COURT OF MONTGOMERY COUNTY,
ALABAMA

RASHAD LEE #213823 VS SHIRLEY BROWN
03-SM-2013-000199.00

The following matter was FILED on 5/6/2013 4:12:01 PM

Notice Date:      5/6/2013 4:12:01 PM

TIFFANY B. MCCORD
CIRCUIT COURT CLERK
MONTGOMERY COUNTY, ALABAMA
251 S. LAWRENCE STREET
MONTGOMERY, AL 36104

334-832-1260

ELECTRONICALLY FILED
5/6/2013 4:12 PM
03-SM-2013-000199.00
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
TIFFANY B. MCCORD, CLERK

## IN THE DISTRICT COURT OF MONTGOMERY COUNTY, ALABAMA

LEE RASHAD C #213823,       )
Plaintiff,                  )
                           )
V.                     )  Case No.:    SM-2013-000199.00
                           )
BROWN SHIRLEY,         )
Defendant.            )

### ORDER OF DISMISSAL

This case was before the Court on May 6, 2013.  The Plaintiff failed to appear and the Defendant appeared.  It is therefore ORDERED, ADJUDGED and DECREED that this case is hereby DISMISSED for Plaintiff's failure to prosecute.

DONE this 6th day of May, 2013.

/s/ JIMMY B POOL
DISTRICT JUDGE

PETITIONER EXHIBIT 23

Mr. Bias:

I write this letter in Good faith hopeing to enlist you to attempt to assist me in this urgent and very stressful situation I am faceing. I ask that you scan this letter and place it into my institutional file that in the event it needs to become evidence as a defense of mine I know where to get a copy to show that I did seek DOC assistance numerous of times. I spoke to Captain Robinson on Friday and he told me that he'd submitted my name to be swapped out to Ventress so that I can see my family. I haven't seen my kids or mother in three years since I left Ventress. I was told that I'm barred from Central Alabama. I have copies of the (2007) Email from Paul Whaley to then Classification Supervisor Mark Bruton @ Ventress. As I explained to the Classification from Fountain to Bibb to here the Email is a fabricated lie! I never did what was alleged in that Email and had I did it then my Questions is where are the letters that I wrote to the lady putting for in her as the Classification Supervisor said to get me barred? where is the notification from the Warden at Ventress that was mandated to be put in my institutional file per the ADOC Adminin Reg 448. None of it Exist and I assume that you know as well as I that you can't be Just some thing u/p prov? why wasn't the letter replied and put in only file if they and? why Wid they EXist? why

RECEIVE
JAN 8.2.2013
By: Limestone Classification

Put the ? since in my file as the 448 days
He was suppose to be. Nobody seems to care
on understand the emotional, or physcological
effect that this is having on me not being
able to see my family or talk to them
other than by the mail for the past three
years. Am I gonna have to "snap" and do
something serious to get someone attention so
that someone will look into this problem to
try to help me because its not fair that I
im being punished for something I didit do
nor is there any proof I did other than an
angry mother whose daughter I mistakenly
killed trying to save my own life. And to
top it off my daughter (18) son (16) have both
written Carolyn Folsom, and Grant Culiver to
ask that they under me so that I will be
able to come back to Central Alabama so that
I can see them. My daughter just had a
baby (3) weeks ago and in (8) weeks she is
off to the Airforce! We have for months been
trying to get to see eachother So that she
and my son can talk about what they
need to do see the WA I tell him to get
me the ? here. ? the ? would me
? (4) years ago ? anyone
in ? my wife immediate family

want me out then he & the state will make every effort to honor there wishes because it was the (Mother) that wanted me to come to prison in the first place and it was She that Called Kilby upon me being Convicted and told Kilby she dont ever want me near Bullock County or my kids and I've been back and forth to Lime Stone (4) times over the years and when she found out I was at Ventress in 2007, through a letter I wrote my Daughter (13) at the time at my moms house she Called Ventress and put those lies in the Classification head and he E-mailed the Direction of Central Records and I got me banned! I haven't Spoken or Contacted that Woman since 1999 the year before this happened between her daughter & I. I'm not guilty of vialating any ADOC mail Rules as Carolyn Hudson, and Stephanie Atchinson said in my file and I'm at the Breaking Point! My mom has been Sick, and cant get to see me I Cant see my kids and you or no one else Wont feel this pain in my mind or hearts from all of this which is a unfair lie.

the bigger and bigger to be unbarred so I
Can Get home (closer) to see my Daughter
and Son so that they Can try to go get
one out through the WA but it seems
as if the WDC is trying to Prevent that
Nobody seem to Care, on Cant do nothing
to include Warden Estes. I even wrote Warden
Goode but Nobody will listen, on Care and
I'm at the Breaking point! I was told by
Carolyn Golson through a letter (check my file)
that in February She will Consider lateral
transfer to facilistate visitation! Consider not
Do it! my Daughter will be gone by
then and now I'm at a New facility and
She may Just Come with the Excuse I
have to stay here six months and thats
Gonna push me over the edge foreal. Why
Cant you people see warning signs before
things happen when inmate beg yall for
help Espically when the inmate is right?
and I wone what that Email said I did
I wouldt waste WDC time I'd Just take
what punishment they gave me and Shut
up Im wone Nothing to Deserve
this and if WDC Can produce one

RECEIVED
JAN 0 2 2013
Limestone Classification

Limestone imaged

Shred it, be quiet! Psst psst shhh... Well, I'll lay down and imagine the Warden leaving me there (until 2010 (three years later) had I did that and said that to him what the bogus ass E-mail say I said?) Can you E-Mail Carolyn Golson on Grant Culiver and find out am I gonna be able to get to Central Alabama before my Daughter leaves the Country in March. Or am I gonna be stuck here forced to not visit or see my family as no one else is espically w/out ‍proof of A violation? I'm sure you won't know what its like to not see your mom and kids for 3 years because of a lie do you? Mam with tears in my eyes I'm begging you because I'm not gonna be able to Maintain much longer like this and I've talked to Mental health about this there fore I've covered myself and left A paper trail. I need to see my family! I aint guilty of anything except wanting my kids al my moms house something that ‍Bitch ‍I had no right to do! (Have a relationship with my kids)

RECEIVED
JAN 0 2 2013
Limestone Classification

Lee,
Per the acting Classification Director. the bar will remain @ This time. this is due in part to your recent behavior @ Bibb (threatening letter to inmate's family). She said she would re-evaluate in 6 months. with 213823

Ashull Lee
213823
(B122-215113)



**State of Alabama**
**Department of Corrections**

Alabama Criminal Justice Center
301 South Ripley Street
P. O. Box 301501
Montgomery, AL 36130-1501
(334) 353-3883



ROBERT BENTLEY
GOVERNOR

KIM T. THOMAS
COMMISSIONER

Rashad Lee #213823
Limestone CF- K77-31A
28779 Nick Davis Rd.
Limestone, AL. 35749

Inmate Lee,

I have received several letters from you regarding transferring and can not answer a letter before receiving another one.. I have reviewed your file and you are barred at this time from being housed in the Central area of the state. This was most recently acknowledged by recently retired Classification Director Carolyn Golson.

Warden Patrick was in error to state that you could be placed on a SWAP out. I did speak with your Mother and at the time I reviewed the file I did not see the restriction for you being placed in the Central region.

However, after reviewing your letter from last week and the documentation you provided, you are correct that you are restricted from that region.

There is nothing I will be able to do at this time to facilitate a transfer to the Central Region.

Sincerely,

Grant Culliver,
Institutional Coordinator

PETITIONER exhibit 24

cc:    Dewayne Estes, Warden III
       Institutional File
       File



**ROBERT BENTLEY**
GOVERNOR

# State of Alabama
# Department of Corrections

Alabama Criminal Justice Center
301 South Ripley Street
P. O. Box 301501
Montgomery, AL 36130-1501
(334) 353-3883



**KIM T. THOMAS**
COMMISSIONER

June 05, 2013

Rashad C. Lee #213823
Limestone C.F.
29779 Nick Davis Rd.
K77-31A
Harvest, Al. 35749

Inmate Lee,

Your letter was forwarded to me from Mrs. Mosley. Inmate Lee, I have responded to you on more than one occasion, as well as spoken with your mother, Mrs. Kendrick, about your being barred from the Central Region.

You have been thoroughly advised by the staff, myself, as well as former Classification Director, Carolyn Gholson; you will not be transferred to the Central Region in the foreseeable future.

In addition, for you to allege that no has returned any phone calls or spoken to your family is an understatement. I will not spend any more time looking into this matter, because nothing has changed.

Again, I understand that this is not what you want to hear, but these are the facts. You were barred from this region, due to your own actions, thus you can only blame yourself. I do understand that you state the intent was not there but if the victim perceived harmful intent, there lies the problem.

Hopefully you will continue to have good behavior and become involved in something productive. Please do not forward anymore correspondence along these lines to the Central Office.

Sincerely,

Grantt Culliver,
Institutional Coordinator

PETITIONER EXHIBIT25

cc:    Dewayne Estes, Warden III
       Institutional File
       File

PETITIONER EXHIBIT 26

Mr Beas
January 13, 2013

I recently wrote you Concerning the E-mail being flagrantly put in my file that is keeping me from being moved to Central Alabama so that I can see my family. I'd Ask that you E-mail Carolyn Holson Concerning the same to see if she was gonna transfer me next month as She had wrote to me and told me in A letter that is in my file. Have you got any information on that request yet have you any idea when I will be transferred close to home?

Rishard Lee #11
213893  3114

Carolyn Holson retired.
I'm working on it and
will let you know what
I find out.
D/Bear
1/16/13

RECEIVED
JAN 1 5 2013
By Limestone Classification

Limestone imaged
1-22-13
( date )  ( by )

STATEMENT OF THE FACTS

## THE FOLLOWING CLAIM IS BEING INITIATED PURSUANT TO THE FIRST, EIGHTH, AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
### 1st, 8th, 14th, Amend. USCA

On on about October 25, 2012, while housed at the Bibb County Correctional facility inmate Lee was advised that he was [ permanently barred] from the Central Alabama Facility by Classificaition by Specialist Riley Freeman.

Lee then asked what do you mean I am barred from the Central alabama Area when I was just at Ventress for Five years ( 01-02) (06-2010) and now you say that Im barred. Riley replied yes barred. I asked by who and for what reason? Riley stated that you should know and I cant tell you because the information is confidential. Lee then began to write request slips to the classification attempting to get information as to why was I barred and who had done that because as of the progress review hearing I had just been notifed for the very first time that I was barred and I had not heard that before.

Subsequently, I was not given a hearing for due process purposes on the barring of me and I had no notice that I was gonna be barred . I then spoke to Warden Thomas about the reason that I was unable to transfer . He then pulled my file and looked through my file on the computer and stated that I see why you are not able to see your family, and go back close to home there's a E- Mail in your file that is barring you from being ever placed in a prison back in Central Alabama as long as you are in Prison.

I then asked a Email form who, and when? The warden stated that the E-Mail was from Mark Bruton , and Paul Whaley back in 2007 while you were housed at Ventress Correctional Facility. I then told him that it could not be because I was housed at Ventress until 2010, until I transferred because a drop in my security level and then I went to a minimum security facility from there . I the began to write CEntral Record Division inquiring about the

1.

E-mail ......Ie How did it  get into my file without me being told that it was
being placed there,and who authorized the placement of a erroneous E-Mail in
my file for something that I had been accused of doing and the ADOC had no
proof of me actually doing other than ore tenus evidence from a alleged phone
call . I still didnt get any answers from anyone so then I went back to the
Shift office and A Lt. allowed me to see  the E- mail on the Computer as he
had my file pulled up on the screen. After I read the E- Mail on the screen
I then rewrote the Warden, and Classification telling them that I had not
written anyone except my kids, at my mother house and that was not against the
Rules and regulation of ADOC. The Lieutenant then said you're right but as it
seem's  Mark Bruton asked that you be barred form Central Alabama Area based
upon the fact that the Victim mother had called up to the prison and stated
that I had been writing letters to her and that she wanted then stopped.
The Lieutenant then allowed me to see this on the computer and I told the
Lt. that I had not written that lady since I been in prison, but I had of
course written my kids several letters at my mothers house and that the
kids may have taken the letters back to the grandmother's  house but at no
time had I written her because of the nature of the case and apparently that
is why Mark Bruton placed that in my file. I then asked the Lt too check my
file to see had the Warden placed a memo in my file as the Admin.Reg of ADOC
448 States that he should have upon a request for termination of corrospondence
with her or my kids, as the Lt stated the E- Mail stated that I had been called
up to the Warden's office and Quesitoned about the letters ,. I said yes I
was called up to the Warden's office and as I stated I was asked by the
Warden had I written the lady any letters. I then told him no " I had only
written my kids at my mothers address,and maybe they took the letters back
to their grandmothers house I dont know because I am in here. The warden then
told me that I am going to get the letters ,and if they are to that lady then

2.

you will be transferred immediately to Limestone because you lied to me . I
said ok, get the letters. The warden had the Captain to go and get the letters
and called me back to his office and then stated that " I was telling the
truth and the letters were addressed to the kids and not her, and that I
could continue to write my kids." The warden also said that she want me to transfer
you so that your mother wont be able to bring the kids to see you but Im not gonna
do that because you have the right to see your kids despite what happened between
you and the kids mother so Im not gonna transfer you and make sure that any
letters you write that they go to your mother house at her address and to the
kids that way she cant lie and say that you are harrassing and writing to her.
I said ok and was dismissed. I clearly explained all of this to the Lt at Bibb
County but he stated that there was nothing that he could do obviously because
Central record in Montgomery had me barred and not Bibb County Facility.

I then continued to write Carolyn golson who was the Director at the time
seeking resolution of the issue as to why was they barring me when my mother
had called several times asking that I be transferred back to ventress because
I hadnot done anything to be transferred let alone barred from ever returning
to Central Alabama . I got one response  stating that I will REMOVE the Bar in
(6) months upon good behavior and A six month Clear record. Then afterwards
she retired and nobody wanted to address the problem.

I then started to write Commissioner Deloach, Culiver , and Finally
Thomas asking why was I being Banished against the Alabama Constitution for
exercising my first amendment riights to my kids. No one would answer me at
first  then I filed a writ of Certiorari in the Montgomery Circuit court
attempting to get the Montgomery County Judge to Order that ADOC remove the
Restriciton (E-Mail ) from my file and transfer me back to Ventress as it

3.

Law Library Use Only

JUL 0 2 2013

it was the facility that I was housed at prior and during the time that the
E- Mail had been placed into my institutional file. The Montgomery County Court
judge denied the Certiorari petition and Lee again continued to write the
Commissioners trying to get the commissioners to remove the restriction so
that he would be able to see his family as he has not seen or talked to his
family other than by mail,only once since he was transferred from Ventress
in 2010,and the mental Effects were crucial on Him as his mother had been
sick and she had been calling trying to get Lee back close to home that is
( Ventress) so that she and his kids could see him because none of them could
visit Lee at Limestone Correctional Facility as it had been  only 10 minutes
from Ventress to visit Lee as of now Lee told the Commissioner that his mom
and Kids cannot drive the (5) hours away to see Lee and that it wasnt fair
that Lee be punished for something that he didnt do espically when the
WARDEN did not and had not placed in Lee's file any notice as the ADOC Reg.448
mandates, which proves that the Restriction  was placed in Lee's file
arbitrarily , capriciously, and Lee was transferred and not allowed to come
back to Ventress, or any other prisons in Central Alabama for pure evil
reasons ,which was a retaliation for Lee writing the kids. Classification
Specialist Mark Bruton only contacted the Warden because the victim mother
stated as the E- Mail states " She didnt know that Lee was back in the
Central Alabama Area" whereas the only way she knew was by the letters
addressed from Ventress  to Lees kids. The Classification never allowed Lee
the opportunity to refute the allegations contained in the E- Mail  thus
violating Lee's Due Process Rights and 8th Amendment Cruel and unusual
punishment because the E- MAil was placed in the File without any proof
as mandated by the ADOC very owns Rules and Regulations 448 ( Attached )

4.

Lee arrived at Limestone and began to write the classification here about the same attempting to get the classification to clarify the reason that Lee was barred per the Director of Classification now Cassandra Conway. The classificaiton wrote Lee back stating that Cassandra Conway said that she would consider lifting the restriciton in (6) months with a clear record.

Six months had pasted and Lee was still not being placed in to the DOC roster for transfer even after a year clear record which is over the (6) month month time frame for consideration , and the classification here continued to give Lee the runaround concerning having the restrictton lifted and Lee again began to write the Commissioners to which the only one that responded was commissionerCuliver , which he basically told Lee not to write the Central Office anymore with a request concerning the restriction being removed from his file thus Lee having to initiate a § 1983 Civil Action lawsuit against the named officials for retaliation against Lee for exercising his First Amendment Rights in writing letters to his Kids.

Lee told Commissioner Thomas in a letter recently written to him by Lee to him to view the langauge of the E- Mail placed in Lee's file which was barring Lee from Ever seeing his family again which the Classification Officer / Supervisor then, Mark Bruton stated' : Due to the nature of his crime, the calloness in which he treated the body of the victim which was the mother of his children , the fact that the inmate continues to harass the family of the victim, and the fear that he has generated in the family I am requesting that Lee be barred form the Central alabama Area,and remain in the Limestone Bibb or Fountain Area . The classification officer did not say that I had written threating letters, nor could or did he produce any letters at but at the request of the victim mother not wanting Lee to be able to se his kids because of what happened between Lee and her daughter she told the classificaition to have Lee transferred so that he and his mother

5.

could not talk about bring ingthe kids to see Lee at the Prisons. As of January
2013 Lee has not heard anything else about having the restriciton removed
from his file after numerous attempts to get the same removed by the
Classification,and the Director of Classification and the Commissoners at
ADOC Central records headquarters. Lee also alleged in his letters to the
Commissioner that he was being denied equal protection of the laws whereas
the Prisons and the Commissioner office gets phone calls all the time from
inmates exgirlfriends , exwives and others pertaining to the inmates calling
from cell phones and actually making threats against the people in the
free world but at no times can the ADOC show by the records that the ADOC
have permanently banished and or barred any other inmates from any particular
area  because of inmates contacting the freeworld people by telephone which could
be considered a first amendment violation also and to single him out for a
letter which he wrote to his children is pure vindictive retaliation and
violation of his 1st, 8th, and Fourteenth amendment which no other inmates
have been punished for contacting people by telephone which is freedon of
association even though through the use of a cell phone which is a equal
protection violation under the laws if the States and the Constitution.
I told the commissioner  that no where in the ADMIN REG 448 was it clearly
written or stated that an inmate cannot write the victims of their crimes,
nor kids of a crime for that matter and therefoe I had not violated any
rules of the ADOC MAIL REG. I further stated that there was no disciplinary
action to prompt a transfer or me being barred as the Admin Reg 448 clearly
stated that the Warden should have placed a memo in myinstitutional file
prohibiting me from contacting the alleged victim mother ,and or my kids
but the warden did not because he told me that he could not stop me from
writing to my kids because they were not victims of my crimes as the  letters

6.

that he had retrieved and read were letters definitely to my kids and
not anyone else, and therefore I had violated no institutional rules
and my Due Process had clearly been violated as I had not had a chance to
refute the Allegations in my file that were placed there over 6 years ago
without my knowledge, or consent , which I just mysteriously found out recently
while attempting to transfer back to Ventress Correctional Facility , whereas
Lee has for several years not been able to directly write to his
kids  at the physical address where they actually resided because
of the E-Mail placed in his file and for fear of disciplinary
action by ADOC in retaliation for writing letters to his
biological kids.

I currently have not seen my family in 3 years and some months
and I told Commissioner Culliver and Kim thomas that in my letters
to them . I also explained that I had the chance to see my mom
and kids at least once a month and that because of the Life sentence
that I was serving that visiting with my family kept a lot of stress
off of me and kept me out of a lot of trouble because I had something
to look forward to monthly and it kept my mind at ease knowing that
I would get too see my kids and mom. However I told them that since
I have not seen my family in all this time I have been getting
into  little things , which turn ultimately into Huge Trouble
because my family played a major part in my rehabilitation and
sanity and without seeing my family and having to call once a month
because of the excessive rates of the phone calls was really
weighing on me heavily and that I had started to see the
mental health about the same because I thought I was going crazy
because I could see and or talk to my family which kept me sane
but Culliver told me not to write him anymore concerning my
family ,or trying to get to see them which was a violation of

7.

my first amendment rights to redress the government with greviances
that I have , I was told by the Captain that If I wrote CEntral
Records anymore letters about trying to transfer or get the
restriction out of my file that Commissioner CUlliver would have
me placed in admin,. Seg for a year so I have not written back.

## THIS CLAIM IS INITIATED PURSUANT TO THE FOURTEENTH AMENDMENT
### TO THE UNITED STATES CONSTITUTION

### DENIAL OF    EQUAL PROTECTION OF THE LAW

The invasion of my first amendment by the respondents have violated
my first amendment and fourteenth amendment of the United States
Constitution by denying me equal protection whereas I requested to take
a specific trade(s) ie...heavy equipment operator, diesel mechanics, barbering,
auto body and paint, data processing, cabinent making and refinishing, all
of which other inmates similarily situated as Lee are allowed to [ Choose]
to take at freewill, versus Lee being barred because of the alleged letter
that was written in accord with the first amendment to the United States
Constitution. Lee has written Commissioner Culliver requesting that he
be allowed to take one of the requested trades whereas other inmates similar
situated as Lee are allowed to transfer to different facilities to take a
trade of their choice whereas Lee was a OTR Truckdriver witha valid CDL
Current, should be allowed to take a trade consisting of industrial
commercial trucks engines, thus because of the restriction placed in Lee's
institutional he is being denied equal protection of the laws and he is
being discriminated against by the respondents.

9.

THIS CLAIM IS BEING BROUGHT PURSUANT TO THE FOURTEENTH AMENDMENT
AND THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION

### STATEMENT OF THE FACTS

On March 6,2012, I was housed at the Limestone Correctional Facility when a tornado struck the prison. Subsequently I was transferred to the Bullock County Correctional Facility in Bullock County Alabama, for lack of bed space at Limestone Correctional Facility Building structural damage.

On March 7, 2012, my mother Linda Kendrick had some money placed into my P.M.O. D. account which she had mailed into the Facility by money order which is attached in the complaint. The mailroom stamped the envelope ENTERED on march 7, 2012 the day after I had left the facility on transfer. Subsequently I waited and waited for months for the money to be transfered to the recieving institution which It never did.

Nine months later I was transfered back to Limestone from the Bibb County Correctional Facility, whereas I was transferred from Bullock to Bibb because of Commissioner Grant Culiver and the facts in my initial Claim .

Upon arrival at the Limestone Correctional Facility again I contacted the Business office manager Shirley Brown concerning the missing money that I had yet to recieve some (9) months later after it had been sent to me, at the LCF facility. Mrs Brown told me that she did not have the money and that I had no proof that my family had sent me a $150.00 money order. I then produced the proof of the money Order being sent and Mrs Brown then stated that she had not recieved the money order nor had it been posted to my P.MO.D account.

I wrote back to her stating that the mailroom clerk may have misplaced the money order because it had to had arrived at the facility because other wise the mail clerk would not have stamped the envelope "ENTERED" and for a $150.00. I wanted the Warden to check into the missing money and therefore I contacted the Warden and he told me the same that there was no record of teh money ever reaching the institution or being posted to my account , or being transfered to the recieving institution upon me transferring.

10.

I then filed a claim with the Board of Adjustment which was denied because the Board agreed with Shirely brown that she had no Moral Obligation to repay the missing money back to me.

After the Boards denial I then sought a action in the Small Claims Court of Montgomery County. The Business Office Manager gave an affidavit to the Court through adoc counsel,and the Case for set for a hearing at which the District Court Judge knew that I would not be able to attend because I was incarcerated ,and dismissed my claim against Shirley brown for failure to prosecute and attend. I had previously sent my testimony by affidavit to the District Court in lieu of me being present but the Court nonetheless still dismissed my claim for me no being there to prosecute the claim. I attempted to talk to Captain p. robinson about the Situation and he told me that once the money order arrived at the facility ADOC had a obligation to either 1. make sure the money get placed into the inmate PMOD Account , and or 2.Send the money back to the sender. I explained that my mother had not recieved the money oredr back as it was made out to Limestone Correcitonal facility and that after(9) months she had definetly thrown the reciept away as she surely had thought that I had recieved the money as I was not able to contact her often as I would have liked and I though that sine the money had not caught up with me as ADOC had been moving me from place to place I thought that my mother had recieved the money order back form the prison but come to find out she neither had recieved it back from the prison, nor had it been posted to my account and SHirley Brown refused to investigate teh mailroom clerk to see had the money order been losted or stolen by the clerk so I decided to file through the state courts and ultimately Federal Court for the missing 150.00.

11.

## THIS CLAIM IS BEING INITIATED PURSUANT TO THE FIRST AND EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

On 2/5/13, I was informed by the classification supervisor Ms. Bias that Cassandra Conway E- mailed her stating that the Barr would remain in my file at the time basically due in part to a recent behavior at a previous prison to wit Bibb County Correctional Facility.

The alleged actions that were assocaited with the barr remaining was that I "allegedly " wrote a threating letter to an inmate family. However I wrote Mrs. Conway and explained that I did not write anyone family member a letter, threatning them ,and asked did she have the letter, had she sent the letter to a handwriting analysis to determine had I written the letter , and I further explained to her that She was using something that she could prove that I had done to punish me for. I told her that I had been dating a guys mother that I had recently met while housed at Bibb County Correctional Facility,and that upon the lady and I no longer agreeing that we would continue our " Relationship" her son was angry at me because I had allegedly used the lady for her money.

I did not write the lady any letters I think that she and her son used that letter as a way to get me in trouble because she said I had used her. Nonetheless I told Mrs Conway that she could not use the letter against me because the lady said I wrote it absent any proof ,and she also failed to give me a due process hearing prior to placing the " Ficticious " Letter in my file so that I could contest the letter. I knew nothing of the alleged letter allegedly being written until I got to Limestone and was notified by Ms Bias classification on the request / letter that I wrote to her and recieved back on january 2,2013 See Ex- 10.

I requested that a copyof the letter be given to me for purposes of me seeing what the contents of the letter was and be able to contest the letters again but I was never written back by Ms Conway , and the letter is still in my file and being used against me for something that I did not do or get the chance to contest .

12.

THE FOLLOWING CLAIM IS BEING INITIATED PURSUANT TO THE EIGHTH AMENDMENT
8th AMENDMENT USCA 8
14th Amendment USCA 14

STATEMENT OF THE FACTS

I arrived at the Limestone Correcitonal Facility on November 21,2012 ,
and upon arrival was assigned to the K-Dorm bed 77- 31 A in the dayroom.
After several weeks of awaiting to get a cell assignment because of the
lights beingon 24-7 in the day room I wrote the Warden and the Captain  about
turning the lights off at night after 10:00P.M. lockdown.

I never recieved a response form either but was told by one of the officers
that work the dormitory that he would turn the  lights off [that ] night because
it was really bright in the dorm, and I told the officer that I could not get
to sleep because of the lights being on all day and all night nonstop in the
dorm dayroom. he said why dont you get a cell so that you can turn the light
off in the cell when you want to/ need too?

I said because I am not paying for a cell and  beside its about to be summer
and  the cells are hot and improperly ventilated and I have asthma and I need
to be in the open in the day room where the fans (2) are actually blowing air
on me and not stuck in a cell. He said well I will turn em off tonight but cant
say that all the officers that  work the dorm after tonight will turn the lights
off. I said ok. Later that week I requested that the Captainor the Warden please
Order that the Lihgts in the Day room be turned off at night so that we can
sleep and that the Supervisors please make sure that the Dormitory rovers
are actually roving the dorm that way no excuse could be used for security
purposes the lights would have to stay on as they did 24/7.

I also told the Warden in my letters /requests that I did not want to move
into a cell because it was getting hot and the cells were impsoperly
ventilated, and I was asthmatic and did not want to get in a cell with a
person that smoked and then face those problems also. I specifically asked
that the lights in theday room be turned off at night so that we could have

13.

darkness as the inmates in the cells have after lockdown, because they have the option to either sleep with their lights on in their cells or turn them off so that they could actually go to sleep and they didnt have to constantly try to get to sleep with the lights on all day 24/7 as we in the day room did.

I did not get a response from either the warden or the captain and again wrote requesting that the lights be turned off because I had started to suffer headaches and sleep deprivations from lack of sleep at night because I tossed and turned all night trying to get to sleep.

Subsequently, there was no answer to the many requests that I sent concerning the lights being turned off at night in the Dormitory Day room because I along with other inmates were not getting enough or no sleep at night because the lights were mentally torturing us and I decided that I would spend the money and file me a Federal Lawsuit challenging the prison policy to keep the lights in the day room on 24/7 when the lights in the cells are turned on and off at will even when there are two or three dorm rovers in the dorm. I would like this court to order the Prison to Order the dayroom lights be turned off at night and take some preventative actions to assure that the rovers that are getting a paycheck to Rove do their job and stop sitting in the Cubical all night sleeping and that way they cant continue to say that the light's are on for security reasons only, when the security dont and wont walk dorm as mandated by the Facility Regulations.

14.

THIS CLAIM IS BEING INITIATED PURSUANT TO THE EIGHTH AND
FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

## OVERCROWDING AND UNCONSTITUTIONAL TREATMENT

I have contacted the Limestone Administration concerning the excessive
and overcrowded dormitory that I sleep in. There are Sixty Six (66) men in
the dayroom that I sleep in and there are only three (3) bathrooms, that
are currently available for use by all Sixth six of us, along with all
the other inmates that have cells with toilets and sinks in them but still
the administration allows them to utilize the dayroom bathroom which I
suffered a physical altercation because of the lack of bathrooms that
are available for usage for the dayroom inmates.

A lot of morning s I am forced to literally fight to get into the
bathroom because the officers only give a five minute wakeup call and at
that time all Sixty Six inmates are racing to get into the bathrooms to do
their hygeine so that they wont miss breakfast.

During that Five minute wake up call there is not enough time for all
Sixty Six men to use have adequate time to use the facilities which has resulted
in many a days me missing breakfast, an or having to go straight out the door
witheout me having brushed my teeth, washed my face, or use the bathroom and
I subsequently have to choose between using the bathroom when one becomes
open and or missing breakfast, because the officers only give one wakeup call
(5) minutes, and one (5) minutes exit the dorm call which by the time a
bathroom is opened you cant leave the dorm and go eat because most of the
inmates have taken so long to use the facilities . I have missed breakfast
several occassions for the same reasons.

Furthermore the bathrooms are so filthy because the administration
will not give us the adequate cleaning supplies to keep them clean. I have

15.

reported to the administration how the guys in the cells with sinks and toilets continually use the dayroom bathrooms (3) to keep their cells sinks and toilets clean but the administration refuses to supply me and or the other inmates in the dayroom with the necessary supplies to keep, the toilets and sinks clean in the dayroom bathrooms. The administration refuses to sanctions the inmates in the cells that have sinks and toilets , for using the (3)bathrooms in the dayroom which deprives the (66) men and I included from having the adequate bathrooms for usage during any given time.

inadequat

Furthermore, the administration have been asked by me along with other inmates to fix the showers that are broken in the dorm that all (155) men housed in my dormitory have to use within a set time or else you dont shower for that day /night which lead to staph infection and other disease being spreaded throughout the dormitory.

The administration have been asked by me to properly ventilate the dorms because I am asthamatic and at times have problems breathing becauseeit is so hot in the dorm and there are only (2) two fans in the dorm that are constantly blowing hot air even though the exaust fans are puling the hot air out of the dorm but they are not properly cleaned and therefore dont help because of the extreme heat. We are not given ice but once every twelve (12) hours once per shift, and even then every inmate does not get ice because it is not enough ice to go around because of a lack of ice machine in the facilities to supply enough ice for the inmates to have when and as needed.

Thewindows in the facility/dorm where I sleep is either closed and cant or wont open becauseeof the broken handles that the administration refuses to make maintenance repair, even after numerous requests by me and other inmates in my dormitopy.

16.

Several windows are broken out,and several are shut closed and cant be opened either manually , or by hand because the handles are broken and some are welded shut, held shut by screws that have been put in place by the facility maintenance department which leaves no aircirculating throughout the entire dormitory dayroom area.

There are Two (2) circulating fans in the entire dorm for the (155) men on my particular side of the dormitory, which oftenleads to fights about who the fan is gonna be on because it's so hot and there is not enough ice in the dorm ice chest to accomodate the capacity of men that are housed in the dorm . Ice is not passed out but one time per shift , and even then it is not enough ice is not enough and is gone in less than (10) minutes and I , and we are forced to wait another (12) hours for more ice.

Also the administration has been asked to remove some of the beds that are in the dayroom because of lack of space to walk and move about in the dayroom area. I have repeatidly asked the administration to take the beds out or seperate them because I have gotton into several verbal,and almost physical almost physical altercations , because when I open my locker box ½ way , either my butt or the box is in the person that sleep next to me immediate area  (or face) which is considered disrespectful.

Despite my repeated requests and Orders from the ACLU the administration has not moved any of the many beds in the poorly ventilated overcrowded dorm.

The respondent warden has been asked by me to implement  a policy in the dining hall concerning the serving trays that are wet with diswasher water as well suds from the detergent that is used to clean the trays when they are placed in the line with my food on  my tray as well as other inmates trays. The administration refuses to address this problem.

Finally the administration is refusing to remove " SMOKE CAGES " that were constructed outside the EMERGENCY FIRE EXITS of each dorm that are constructed

17.

Of permieter fenceing 20x 12 along with barbed wire across the top
of the cage  whereas in the event of an emergency and the officers
can't get to the shift office in time, to get the keys to unlock
the locks then the gate on the SMOKE CAGES  will prevent a
immediate escape route which may cause damage from smoke inhaliation
or other serious or detrimental injuries trying to get across the
top of the barbed wire cage to escape the fire, ect.

 The shift office is about 200 yards away,and by the time a
supervisor comes with the keys, I , or several other inmates could
be seriously injuried, or even killed because of a Blocked FIRE
EXIT and the CAGE Outside the FIRE EXIT EMERGENCY DOOR.

 The administration refuses to remove the cage and have been asked
numerous of times by me and the other inmates but to no avail.

 I have also had problems with inadequate locker box storage
where the prison allows us to buy incentive packages and then
the prison gets a percentage off the proceeds ,and then  attempt
to make us send the excess property home because of a lack of
storage space that is available to us in the dormitory.

 The dining hall also is extremely unsanitary whereas the food
prep crew- inmates clothes are filthy,and unwashed, the workers
are not mandated to undergo food prep and sanitary training
prior to being employed in the kitchem,nor are the inmates that
work in the kitchen mandated to wear gloves and or hair nets to
help the food and trays stay germ free. Furthermore the noise
level inb the dorms are excessive and the administration refuses
to attempt to cut the noise to a minimum.

18.