FILED

2017 Feb-08  AM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| RASHAD C. LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  5:13-cv-01365-JHE |
| | ) | |
| WARDEN ESTES, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Rashad C. Lee, a *pro se* litigant incarcerated in Fountain Correctional Facility, (doc. 60), filed this action on or about July 13, 2013, seeking monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights.    After several years of litigation, the sole remaining claim is an Eighth Amendment claim against Warden Estes, for which only nominal damages are available since the plaintiff is no longer incarcerated at the facility and does not allege any physical injury.  (*See* docs. 51, 54, 57, 59).    Specifically, the plaintiff contends Warden Estes violated the Eighth Amendment's prohibition against cruel and unusual punishment by allowing locked smoke cages to block emergency exits while he was incarcerated at Limestone Correctional Facility ("LCF").  (Doc. 1 at 63-64).

On June 10, 2016, after the court dismissed all other claims at summary judgment, the undersigned held a phone conference to discuss the status of the case.  Thereafter, the court set a discovery deadline for any additional discovery needed on the remaining claim and set deadlines for the parties to file dispositive motions and responses thereto.  (Doc. 70).  On August 26, 2016,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 68).

Warden Estes filed a second motion for summary judgment.[2]  (Doc. 79).  The plaintiff has filed no response.  (*See* doc. 78 setting deadline for the plaintiff's response).   For the reasons stated below, the motion for summary judgment, (doc. 79), is **GRANTED**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, the discovery, and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial."  *Id.* at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor).  Any factual disputes will be resolved in Plaintiff's favor when sufficient

---

[2] Defendant Estes moves to replace Jimmy Collier's signed affidavit, (doc. 79-2) with a signed and notarized affidavit.  (Doc. 80).  The motion is **GRANTED**.

competent evidence supports Plaintiff's version of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a Court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. V. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

Where, as here, the adverse party does not respond, "summary judgment, if appropriate, shall be entered against the adverse party."  Fed. R. Civ. P. 56(e).  Even though the motion is unopposed, the court still must determine whether summary judgment is appropriate and must therefore consider the merits of the motion.  *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1101 (11th Cir. 2004) (citing *Dulap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1989) (*per curiam*)).  At a minimum, the court must determine whether the motion is supported by the evidentiary materials filed in support; the court is, however, not obligated to *sua sponte* conduct a review of all evidentiary materials in the record.  *See id.*

## II. Summary Judgment Facts

On July 23, 2013, approximately eight months after he arrived at LCF in November 2012, the plaintiff filed a sixty-four-page lawsuit wherein on the last pages he included two paragraphs of allegations about the smoke cages at LCF.  (Doc. 1 at 63-64).  In the complaint, the plaintiff focuses on the alleged safety issues involved, when the riot doors malfunction, having to wait in

the locked smoke cages that surround and block the emergency exits while an officer purportedly has to retrieve the key to the lock or bolt cutters to break the lock.  (*Id.*).

The plaintiff's former dorm at LCF has three exits: one primary exit (also referred to as riot doors) and two emergency exits.  (Doc. 79-1 at 5 (14:12-23)).  As of November 2012, when the plaintiff was last incarcerated at LCF, smoke cages were located outside the dorm's emergency fire exit doors.  (*Id.* at 5-7, 60 (14:12-23, 21:1-17, 22:13-19, 102:1-3)).  The perimeter of each cage was twenty feet by twelve feet.  (Doc. 1 at 63-64).  Barbed wire was placed across the top of the cage.  (*Id.* at 64).

The plaintiff claims inmates could smoke in the bathrooms at LCF.  (Doc. 79-1 at 8-9 (32:21-23 to 33:1-6)).  He became concerned about his safety and how he was supposed to get out if something caught fire in the bathroom while inmates were smoking and/or warming up food in there.  (*Id.* at 10-11 (35:1-23 to 36:1-23)).   The plaintiff testified he believed the gate keys to the smoke cages were kept in only two places – either in the shift office located some distance away from the smoke cages or with the maintenance man who has master keys to all prison locks.  (*Id.* at 23-25 (51:15-53:16)).  However, Christopher L. Gordy, a warden at LCF since March 1, 2015, attests that during normal business hours it would take less than ten minutes for tools to be retrieve to cut the locks on the smoke cages.  (Doc. 79-4 at 2).  He further attests that after normal business hours, it would probably take twice as long to retrieve tools to cut the locks.  (*Id.*).  The keys to the locked smoke cages are kept in the following locations: Dormitory Cubicles, Yard Rovers, and all Security Supervisors.  (*Id.*).  It would take less than five minutes for Security Personnel to unlock the smoke cages.  (*Id.*).  The dorm's riot doors, the primary means of ingress and egress, can be opened manually with a key even if they "malfunction" or could not be opened by the cube officer using the control panel.  (Doc. 79-1 at 13 (38:15-23)).

4

The plaintiff describes three incidents involving an issue with the smoke cage locks and riot doors. The first incident involved the malfunctioning of the riot doors when the inmates were lined up to go eat. The plaintiff testified that the cube officer, Officer Gilbreath, had to call Sergeant Griffin over the loud speaker to come manually open the riot doors so the inmates could exit the dorm to eat.[3] (Doc. 79-1 at 16-20, 27, 33, 54-55, 74-75 (41:1-7; 41:12-23 42:1-7;42:8-11; 43:1-11; 44:6-17; 55:23; 64:20-23; 94:1-23; 45:16-23 -46:1-23; 95:1-8; 132:17-23; 133:1-8)). During this time, the inmates did not attempt to exit the smoke cages; they were lined-up to go to lunch, and there was no emergency. (*Id.* at 28-29, 51 (56:1-57:7, 91:1-11)). The plaintiff also offers an affidavit from inmate Ronald Sutton, who attests that he has been housed in this dorm for six years, and appears to corroborate the plaintiff's description of this incident. (Doc. 39 at 5).

The second incident, referenced in an affidavit from inmate Michael Perry, deals with an inmate in the dorm who had a heart attack. The plaintiff testified it was cold, and the locks on the smoke cages were frozen, so medical personnel had to cut the locks off the smoke cages with bolt cutters to take that inmate from the dorm to the healthcare unit. (Doc. 79-1 at 24, 43 (65:1-21; 74:1-11)). Inmate Perry's affidavit states that medical personnel had already restarted the inmate's heart and placed him on a backboard. (Doc. 39 at 4). But, medical personnel could not get out of the dorm through the emergency exit, where the infirmary's emergency cart was parked, because the lock on the smoke cage around the emergency exit had rusted and would not open. (*Id.*). The plaintiff later testified he does not know if the locks were frozen or rusted. (Doc. 79-10 at 43

---

[3] Officer Gilbreath submitted an affidavit stating she is not aware of any incident involving the riot doors being inoperable between November 12, 2012 and July 2013, and does not recall Sergeant Griffin assisting in manually opening any riot doors. (Doc. 79-10). In an affidavit, Sergeant Lavance Griffin also attested to having no recollection of this incident. (Doc. 79-11).

(74:12-18)).  The plaintiff further testified, after medical personnel left through the emergency exit with the inmate who had a heart attack, maintenance came through and unlocked the riot doors manually with a key.  (*Id.* at 44-45 (75:1-22, 80:16-21)).  In his affidavit, Inmate Sutton further attests that he has seen the smoke cage locks "malfunction several times during the winter months" and the maintenance department had to cut the locks off with bolt cutters during the yearly inspection.  (Doc. 39 at 5).

The third incident the plaintiff points to is when the riot doors malfunctioned because the electricity went out.  (Doc. 79-1 at 76 (134:15-23)).  The plaintiff explains the yard was locked down, and the inmates had to go to their beds until someone could come unlock the riot doors.  (*Id.* at 56 (97:4-23)).  Because there was no need for the inmates to exit the dorm at this time, the plaintiff was unable to say if there were or would have been any problems leaving the facility through the smoke cages at this time.  (*Id.* at 57, 77 (98:1-18, 135:3-12)).

The plaintiff testified he made one written complaint about the potential dangers of the smoke cages around the emergency exits, giving copies to Warden Estes, Warden Goode, and Captain Robinson.  (Doc. 79-1 at 64 (111:9-19).  The only ADOC employee the plaintiff spoke with about the smoke cage issue was Captain Robinson, and he spoke with Captain Robinson on one occasion when they were discussing another custody issue.  (*Id.* at 64-65 (111:20-23 to 112:1-5)).  The plaintiff did not speak with Warden Estes about the smoke cage issue.  (*Id.* at 62 (108:4-8)).  In his affidavit, Inmate Sutton states "[w]e have --- made this complaint known to the Warden(s), LCF Administration, but to no avail the Cages remain locked and in place."  (Doc. 39 at 5).

An affidavit from Deputy State Fire Marshall Jimmy Collier states that the smoke cages can also be classified as a place of refuse, i.e., a secured area where inmates can be safely placed

6

in the event of an emergency at the facility.  (Doc. 79-2 at ¶6).  Since the exterior walls of LCF's

dormitory and metal door, which separates the fenced in smoking cage area from the interior of

the dormitory, have a fire rating of approximately two hours, the possibility of someone being

injured in the smoking cage area by a fire related event is minimized.  (*Id.* at ¶8).

### III. Analysis

In this motion for summary judgment, Warden Estes sets out three independent bases for

why he is entitled to judgment as a matter of law.  Warden Estes argues the smoke cages do not

present an Eighth Amendment violation, the plaintiff's claims are moot because he is no longer at

LCF, and that he is protected from suit by Eleventh Amendment immunity and qualified immunity.

(Doc. 79 at 12-17).

### A. Mootness

Warden Estes briefly argues the plaintiff's Eighth Amendment claim is moot because the

plaintiff no longer resides at LCF, thus there is no case or controversy as required under Article III

of the Constitution.  The undersigned fully addressed this issue in the report and recommendation

on the first motion for summary judgment, and the report and recommendation has been adopted

by the district court.  (*See* doc. 51 at 16; docs. 54 & 57).  The plaintiff's requests for injunctive

relief are moot.  However, transfer from the facility where the constitutional violation allegedly

took place does not render a claim for monetary damages moot, *see Dudley v. Stewart*, 724 F.2d

1493, 1494 (11th Cir. 1984) (abrogated on other grounds), and the undersigned specifically

construed the plaintiff's complaint as requesting nominal damages.  (*See id.* at 18).   Accordingly,

to the extent Warden Estes argues the plaintiff's claims for injunctive relief are moot, this issue

has already decided in his favor.  The plaintiff's claim for monetary, albeit nominal damages, is

not moot.

**B. Immunity**

The undersigned has also addressed Warden's Estes's claims of Eleventh Amendment and qualified immunity, and the report and recommendation has been adopted by the district court. The plaintiff's claims against Warden Estes in his official capacity were dismissed due to Eleventh Amendment immunity.  (*See* doc. 51 at 19).  As to Warden Estes' assertion of qualified immunity, the undersigned determined Warden Estes was *not* entitled to qualified immunity, (doc. 51 at 29-30), and Warden Estes has presented no additional facts or law in the present motion to support such immunity from suit.  (*See* doc. 79 at 18).

**C. Eighth Amendment Violation**

The plaintiff alleges Defendant Estes violated his Eighth Amendment right against cruel and unusual punishment by allowing locked smoke cages to block emergency exits.  (Doc. 1 at 63-64).  To establish an Eighth Amendment violation, a plaintiff must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering, (2) the defendants' deliberate indifference to that condition, and (3) causation. *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (internal citations omitted). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson v. Seiter*, 501 U.S. at 290.

"With respect to the objective prong, '[p]risoners have the right not to be subjected to the unreasonable threat of injury or death by fire . . . .'" *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (quoting *Hoptowit v. Spellman,* 753 F.2d 779, 783–84 (9th Cir. 1985); *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (An inmate who has "plainly proved an unsafe, life-threatening condition in [the] prison" can state a constitutional deprivation, and "need not wait until he is [harmed] before obtaining relief.")).

8

Here, the plaintiff cannot establish the first, objective prong of the Eighth Amendment analysis because there is no evidence the locked smoke cages constitute a condition of confinement that inflicted unnecessary pain or suffering and there is no unreasonable threat of injury by death or fire. *See Hadix*, 367 F.3d at 525. Although the plaintiff cites several instances where either the smoke cage or riot door locks malfunctioned, he fails to point to any situation where both sets of locks malfunctioned and the inmates could not exit the facility. Furthermore, assuming the possibility of dual malfunction could inflict unnecessary pain and suffering, the smoke cages at LCF are in compliance with fire safety standards, and the evidence demonstrates that if there were a malfunction of all doors, there would be ample time to retrieve the appropriate tools and manually cut the locks on the smoke cages.

An affidavit from Deputy State Fire Marshall Jimmy Collier establishes that expanded fire safety inspections during the relevant time period revealed the smoke cages to be in compliance with fire safety standards. (Doc. 79-2 at ¶¶1-4). The smoke cages are fenced areas located at each dormitory's second point of emergency egress and, although designed as areas for inmates to smoke, they are classified as "areas of refuse." (*Id.* at ¶6). This means the smoke cages are secured areas where inmates can be placed in the event of an emergency. (*Id.*). The doors to the smoke cages are allowed to be locked with a manual key, but the key must be maintained and available at the facility at all times. (*Id.* at 7).

Notably as it relates to the threat of fire, the exterior walls of the dormitory and metal door, which separates the fenced in smoke cage from the interior of the dormitory, have a fire rating of approximately two hours. (*Id.* at 8). Thus, as the evidence establishes a response time of no more than ten to twenty minutes, depending on if it was normal business hours, to retrieve tools to cut the locks on the smoke cages. (Doc. 79-4 at 2). As such, even if all the locks malfunctioned and

9

inmates were trapped in the smoke cages, there would be ample time to retrieve tools and cut the locks before a dormitory fire posed a threat.  The plaintiff has produced no evidence to the contrary. Having failed to produce evidence to create a genuine issue of material fact as to the first prong of the Eighth Amendment conditions of confinement analysis, Warden Estes is due summary judgment on the plaintiff's sole remaining claim.

### IV. Conclusion

Because the plaintiff has failed to produce evidence creating a genuine issue of material fact as to whether the locked smoke cages at LCF inflicted unnecessary pain or suffering caused by an unreasonable threat of injury or death by fire, Warden Estes is due summary judgment on the plaintiff's Eighth Amendment conditions of confinement claim, and this action is to be dismissed.

A separate order will be entered.

DONE this 8th day of February, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

10